**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REGINA CAMP EL, Individually; HARUN BEY, Individually; AHMARI CAMP BEY, Individually; AHMIR CAMP EL, Individually; REGINA CAMP EL, as Parent and Natural Guardian of A.C.E. a minor, Individually; and REGINA CAMP EL, as Parent and Natural Guardian of A. S.E., a minor, Individually, | Civil Action No.: 21-cv-1636 |

        Plaintiffs,

    vs.

CITY OF PITTSBURGH operating the PITTSBURGH BUREAU OF POLICE, a division of the CITY OF PITTSBURGH; OFFICER ANTHONY CANCILLA; OFFICER ROBERT FRAINO; OFFICER DYLAN BLOSE; OFFICER JOSHUA DENGLER; OFFICER MARIO MORANTE; OFFICER RICHARD DILIMONE; OFFICER RYAN CONNOLLY; OFFICER THOMAS GAULT; OFFICER ANTHONY ROSATO; OFFICER SEAN DUFFY; OFFICER DAWN MERCURIO, OFFICERS JOHN DOE,

        Defendants.

## PLAINTIFFS' SECOND AMENDED COMPLAINT

      AND NOW, comes the Plaintiffs, Regina Camp El, Harun Bey, Ahmari Camp Bey, Ahmir Camp El, A.C.E., a minor by and through his parent and natural guardian Regina Camp El, A.S.E., a minor by and through her parent and natural guardian Regina Camp El, by and through their undersigned counsel, Paul Jubas, Esquire; Paul Jubas Law, P.C., and ,Max Petrunya, Esquire; Max Petrunya, P.C.; and file the following Second Amended Complaint in Civil Action.

## PARTIES

1.     Plaintiff Regina Camp El (hereinafter referred to as "Plaintiff Ms. Camp El") is an adult individual residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

2.     Plaintiff Harun Bey (hereinafter referred to as "Plaintiff Mr. Bey") is an adult individual residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

3.     Plaintiff A.C.E., a minor, (hereinafter referred to as "Minor Plaintiff A.C.E.") is a minor residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

4.     Plaintiff A.S.E., a minor, (hereinafter referred to as, "Minor Plaintiff A.S.E.") is a minor residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

5.     Plaintiff Regina Camp El is the parent and natural guardian of Minor Plaintiff. In addition to her Individual claims, Plaintiff Ms. Camp El also brings claims for Minor Plaintiff in her capacity as his parent and natural guardian.

6.     Plaintiff Ahmari Camp Bey (hereinafter referred to as "Plaintiff Mr. Camp Bey") is an adult individual residing at 1520 Amanda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

7.     Plaintiff Ahmir Camp El (hereinafter referred to as Plaintiff Mr. Camp El") is an adult individual residing at 218 Jucunda Street, Pittsburgh, Allegheny County, Pennsylvania 15210.

8.     Defendant, City of Pittsburgh, (hereinafter referred to as "City" and/or "Pittsburgh"), is a municipality of the Commonwealth of Pennsylvania with its principal officers located at 414 Grant Street, 5th Floor, Room 512, Pittsburgh, Allegheny County, Pennsylvania,

15219. At all times relevant hereto, the City of Pittsburgh was authorized to, and did, operate and maintain the Pittsburgh Bureau of Police (hereinafter referred to as "Pittsburgh Police" and/or "PBP"). At all times relevant hereto, this Defendant acted by and through its duly authorized agents, employees, and/or assigns, who were then and there acting within the scope of their employment, under color of state law and in accordance with customs, policies, and practices of the City of Pittsburgh. Defendant City of Pittsburgh operates the City of Pittsburgh Bureau of Police, which is a governmental entity organized pursuant to the laws of the Commonwealth of Pennsylvania. The Defendant's police officers have jurisdiction on and adjacent in Allegheny County. The Police Officers of such police force are deployed with various lethal and non-lethal weapons for use in execution of their duties. At all times relevant hereto, Defendant City of Pittsburgh was acting under color of state law and acted by and through its duly authorized agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment. The performance of the police officer's jobs was done in accordance with the customs, policies, and practices of the city of Pittsburgh and the City of Pittsburgh Bureau of Police.

9.    Defendant Anthony Cancilla (hereinafter referred to as "Defendant Cancilla" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Cancilla was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Cancilla is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

10.    Defendant Robert Fraino  (hereinafter referred to as "Defendant Fraino" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Fraino was acting under color of state law, within the course and scope of his official duties and in accordance

with the customs and/or policies of the City of Pittsburgh. Defendant Fraino is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

11.     Defendant Dylan Blose (hereinafter referred to as "Defendant Blose" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Blose was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Blose is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

12.     Defendant Joshua Dengler (hereinafter referred to as "Defendant Dengler" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Dengler was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Dengler is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

13.     Defendant Mario Morante (hereinafter referred to as "Defendant Morante" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Morante was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Morante is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

14.     Defendant Richard Dilimone (hereinafter referred to as "Defendant Dilimone" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Dilimone was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Dilimone is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

15.     Defendant Ryan Connolly (hereinafter referred to as "Defendant Connolly" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Connolly was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Connolly is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

16.     Defendant Thomas Gault (hereinafter referred to as "Defendant Gault" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Gault was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Gault is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

17.     Defendant Anthony Rosato (hereinafter referred to as "Defendant Rosato" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Rosato was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Rosato is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

18.     Defendant Sean Duffy (hereinafter referred to as "Defendant Duffy" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Duffy was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Duffy is sued in his official capacity as a Pittsburgh Police Officer and in his individual capacity.

19.     Defendant Dawn Mercurio (hereinafter referred to as "Defendant Mercurio" is a police officer for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Mercurio was acting under color of state law, within the course and scope of her official duties and in

accordance with the customs and/or policies of the City of Pittsburgh. Defendant Mercurio is sued in her official capacity as a Pittsburgh Police Officer and in her individual capacity.

20.     Defendant Officers John Doe (hereinafter referred to as "Defendant(s) Doe" are police officers for the Pittsburgh Bureau of Police. At all times relevant hereto, Defendant Doe was acting under color of state law, within the course and scope of their official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Defendant Doe is sued in their official capacity as a Pittsburgh Police Officer and in their individual capacity.

## JURISDICTION and VENUE

21.     This Honorable Court has concurrent jurisdiction over actions that arise under 42 U.S.C. §1983 and state law.

22.     Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## FACTS

23.     Plaintiffs Harun Bey and Regina Camp El are husband and wife, and the parents of Minor Plaintiff A.C.E. and Plaintiffs Ahmari Camp Bey and Ahmir Camp El.

24.     On November 11, 2019, at approximately 8:00 p.m., Plaintiff Mr. Camp Bey was driving through the City of Pittsburgh. Defendant Cancilla, in his police car, began following Plaintiff Mr. Camp Bey while shining his spotlight on Plaintiff Mr. Camp Bey's car. Even though Defendant Cancilla had not engaged his lights/siren, Plaintiff Mr. Camp Bey pulled his vehicle to the side of the road with the hope that Defendant Cancilla would drive past. Instead, Defendant Cancilla pulled directly behind Plaintiff Mr. Camp Bey and engaged his lights.

25.     In fear for his safety and concerned with the propriety of Defendant Cancilla's

actions, Plaintiff Mr. Camp Bey pulled back onto the street, and began driving the short distance to his parents' house. He obeyed all traffic laws while driving to his parent's house.

26.     Knowing that Plaintiff Mr. Camp Bey was obeying all traffic laws, Defendant Cancilla informed Dispatch that he was not in pursuit and that he disengaged his lights. Although Defendant Cancilla was, ostensibly, not in pursuit of Plaintiff Mr. Camp Bey, Defendant Dengler engaged his vehicle in the incident by following behind Defendant Cancilla's vehicle. Neither of Defendants' lights were engaged on their respective police vehicles while following Plaintiff Mr. Camp Bey. Upon arrival at his parents' house, Plaintiff Mr. Camp Bey exited his vehicle and entered the house through the front door.

27.     Throughout the events forming the basis of Plaintiffs' Complaint, Defendants Dengler, Morante, and Connolly were all present. These Defendants did nothing to prevent the Constitutional Violations which occurred despite witnessing the events and having a reasonable opportunity to intervene to prevent these Constitutional violations from taking place.

28.     Any reasonable officer in the position of any of the other individual officers at the scene and engaging in the behavior giving rise to actions forming the basis of Plaintiffs' Complaint knew, or should have known, that the conduct in question violated the Plaintiffs' Constitutional and Civil Rights and should have intervened to prevent such harm from being caused to the Plaintiffs.

29.     At that time, Plaintiff Harun Bey was walking in his first-floor hallway while holding his 1 year-old daughter, Minor Plaintiff A.S.E. Their 3 year-old son, Minor Plaintiff A.C.E., was sitting on a couch in the living room, which was visible through a window in the front of the house. Plaintiffs Ms. Camp El and her son Plaintiff Mr. Camp El were together in a vehicle in a different section of Pittsburgh.

30.     Upon arriving at his parents' residence, Plaintiff Mr. Camp Bey burst through the front door of 218 Jucunda St.

31.     Plaintiffs' front doorway includes two doors – a first door that opens into a foyer, and a second door that opens into the house.

32.     Plaintiff Mr. Bey turned toward the door, saw his son enter the house, and soon thereafter saw the flash of lights and police sirens.

33.     Plaintiffs Mr. Bey and his son, Plaintiff Mr. Camp Bey then engaged in the following exchange:

> HB: What's going on?
>
> ACB: (gasping) They followed me.
>
> HB: What did you do? Did you do anything? Did you do something?
>
> ACB: No, I saw them look at me (referring to the police) and then they got behind me and followed me with their lights off."

34.     Through the front door, Plaintiff Mr. Bey then saw Defendant Pittsburgh Police Officers at the front door with their guns drawn.

35.     Plaintiff Mr. Bey, still holding his 1-year-old daughter, calmly walked to the front door.  Numerous officers standing in the foyer had their guns pointed at Plaintiff Mr. Bey and Plaintiff A.S.E. Officers were generally screaming that they were going to break the door down.

36.     Plaintiff Mr. Bey and Defendant Thomas Gault then engaged in the following exchange:

> HB: (calmly) What's going on?
>
> TG: (screaming) Open the door! Put the baby down!.
>
> HB: (calmly) What's going on? What do you want? Is there a crime?
>
> TG: (screaming) It's a traffic stop, now open the door and put the baby down.

Plaintiff Mr. Bey continued to speak calmly with officers to learn the circumstances of the situation, and Defendant Officers continued to scream and escalate their threats. The two then

engaged in the following exchange:

> HB: Do you got a warrant?
>
> TG: No, I'll get one.
>
> HB: Well, then that's what you'll have to do.

Defendant Gault then stepped back and out of the foyer with the other officers.

37.     Plaintiff Ms. Camp El received a phone call that a significant police incident was occurring at her home, so she and her son, Plaintiff Mr. Camp El, attempted to return home. The Pittsburgh Police had blocked off the street. Upon arrival at the scene, Plaintiff Ms. Camp El made her way toward her house. As Plaintiff Ms. Camp El began walking toward her home, an officer asked her, "Where are you going?" to which Plaintiff replied, "That's my house." Plaintiff's son, Plaintiff Mr. Camp El then approached, and Defendant Officer Duffy aimed a rifle at Plaintiff Regina Camp El, and in her son's face.

38.     Plaintiff Ms. Camp El then engaged in a conversation with Defendant Gault, in which she informed Defendant Gault that she wanted the name and badge number of the officer who just pointed a rifle in her son's face.

39.     She wrote down that officer's badge number and name, then wrote down Defendant Gault's information.

40.     Plaintiff replied, "No, I want them all." As she started writing down the names and badge numbers of the other officers, Defendant Duffy, with his firearm in hand, walked toward Ms. Camp El, abruptly turned around, and posted himself directly in front of Plaintiff Ms. Camp El. The following exchange then occurred:

> PMCE: Why are you all pointing guns at my house…!?
>
> Def. Rosato: You need to back up! (pointing at Plaintiff Ms. Camp El)
>
> PMCE: Fuck No!

Def. Gault then inserted himself between Defendant Duffy and Plaintiff Ms. Camp El. Defendant Rosato then informed Plaintiff Ms. Camp El that she would be taken to jail for interfering if she didn't back up, to which Defendant Duffy replied, "Why isn't she already?"

41.     Plaintiff Ms. Camp El proceeded to write down Sgt. Rosato's name and badge number. As she began walking towards Sgt. Duffy, Defendant Rosatos stated, "Ma'am, you can't walk into me… you keep that up." Body worn camera showed that contact was initiated by Defendant Rosato, not Plaintiff Ms. Camp El. Defendant Rosato reached out and put his hands on Plaintiff Ms. Camp El as Defendant Gault stepped in front of her, grabbed her, then pushed her backwards.

42.     Defendant Officers Gault, Rosato, Dilimone, and Cancilla proceeded to rough up Plaintiff Ms. Camp El, including one of the Defendants placing her in a headlock during their attempt to put her in handcuffs.

43.     Plaintiff Mr. Camp El watched as Defendant Officers roughed his mother up, then began screaming at and advancing toward Defendant Officers.

44.     Defendant Officers Mercurio, Cancilla and Blose then placed Plaintiff Mr. Camp El under arrest by throwing him chest first into a fence, which caused choking and bruising.

45.     After hearing his wife's screams, Plaintiff Mr. Bey handed the baby to Plaintiff Mr. Camp Bey, then walked outside through the front door.

46.     Officers issued one verbal command for Mr. Bey to place his hands in the air, to which Plaintiff complied.

47.     While making his way toward the gate with his hands up and informing Defendant Officers that he was unarmed, Plaintiff Mr. Bey was rushed by Defendant Officers and pushed to the ground.

48.     At no point did Plaintiff Mr. Bey display any aggression or assaultive behavior towards Defendant Officers.

49.     Defendant Officers Fraino, Cancilla, and Dilimone then kicked Plaintiff multiple times, dragged his face against the ground, cranked his arm and kneed him in the neck.

50.     After handcuffing Plaintiff Mr. Bey, Defendants escorted him to a patrol car. After conducting a pat down, Defendant Dilimone confiscated Plaintiff Mr. Bey's keys.

51.     Defendant Officers then focused their efforts on convincing Plaintiff Mr. Camp Bey into coming out of the house.

52.     Plaintiff Mr. Camp Bey, who was holding his 1-year-old baby sister at the time, exited the house, handed the baby to Defendant Mercurio, and was then placed in handcuffs.

53.     Defendant Duffy, standing on the patio and looking through the living room window, alerted all officers to the presence of the baby, 3 year-old Plaintiff A.C.E. on the couch in the living room. Numerous other officers noted the baby on the couch over the radio.

54.     Defendant Dilimone, without a warrant and in possession of the keys to Plaintiffs' house, then kicked down Plaintiffs' front door causing substantial damage.

55.     With his firearm pointed down range, Defendant Dilimone entered the living room where 3 year-old Minor Plaintiff A.C.E. was sitting on the couch under a blanket.

56.     Defendant Dilimone aimed his firearm at Minor Plaintiff,  yelling "Let me see your fucking hands! Don't move let me see your hands!"

57.     Officer Dilimone later stated, while laughing, "I put a little three year-old at gun point… I didn't know he was a little kid."

58.     Defendants Gault, Rosato, and Duffy entered Plaintiffs' residence and conducted a search of their property, purportedly for a 15-year-old, as well as for guns.

59.     Plaintiffs' residence was searched without a warrant under the pretense of a "protective sweep."

60.     All individual Defendants present throughout the entirety of the events forming the basis of Plaintiffs' Complaint had reasonable opportunities to intervene and prevent Plaintiffs' Constitutional and Civil Rights from being deprived. The failure of the individual Defendants to intervene provides the basis for one of the causes of action.

61.     All of the Defendants knew, or should have known, that their actions and failures to act would cause injuries and damages to the Plaintiffs and that the intentional, reckless, wanton, and malicious conduct of the Defendants violated Plaintiffs' Constitutional and Civil Rights.

62.     Following the arrests of Plaintiffs Mr. Bey, Ms. Camp El and Mr. Camp Bey, Defendants Cancilla, Gault and Rosato conducted more than an inventory search of Plaintiff Mr. Camp Bey's vehicle.

63.     After an initial inventory search, Plaintiff Camp Bey's vehicle was searched by Defendants Gault and Rosato once, and by Defendant Cancilla three additional times.

64.     Following the incident, Defendant Officers charged Plaintiff Ms. Camp El with Obstruction Administration of Law (18 § 5101) and Resisting Arrest (18 § 5104). On March 22, 2021, Plaintiff was acquitted of all charges by Judge Bickett in the Allegheny County Court of Common Pleas.

65.     Following the incident, Defendant Officers charged Plaintiff Mr. Bey with Endangering Welfare of Children (18 § 4304 §§ A1); Obstruction of Administration of Law (18 § 5101); and Resisting Arrest (18 § 5104). On March 22, 2021, Plaintiff was acquitted of all charges.

66.     Following the incident, Plaintiff Mr. Camp Bey was charged with a litany of Offenses by Defendant Officers. Plaintiff Mr. Camp Bey was incarcerated and held in solitary

confinement for 10 months. This coerced Plaintiff Mr. Camp Bey into pleading guilty to the charges against him.

67. Following the incident, Plaintiff Mr. Camp El was charged by citation by Defendant Officers for his actions when seeing Defendant Officers assault his mother, Plaintiff Ms. Camp El.

68. Shortly following the incident, Defendant Officers sold Plaintiff Mr. Camp Bey's vehicle at auction.

69. Following the incident, Plaintiff Regina Camp El was prevented from returning to work because of the nature of the charges against her, resulting in significant lost wages.

## COUNT I

### 42 U.S.C. §1983 – Overview of Fourth and Fourteenth Amendment Violations

### All Plaintiffs v. All Individual Defendants

70. All of the paragraphs above are incorporated herein by reference.

71. At all times relevant hereto, each individual Defendant was a state actor and/or was acting under color of state law for 42 U.S.C. §1983 purposes.

72. At all times relevant hereto, it was the practice, policy, and/or custom of the Defendants, including the individual Defendant officers noted herein, to engage in excessive force, unlawful arrest, improper training, inadequate hiring, negligent retention, and/or unconstitutional and unreasonable search, seizure, and abusive practices.

73. The actions of all Defendants in this matter related to the incident on November 11, 2019 involving the Plaintiffs constitute violations of Plaintiffs' Civil and Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitutions. Said rights include the right to be free abusive, arbitrary, and capricious governmental action, and to be free

from discrimination based on their race and ethnicity. These rights are enforceable via 42 U.S.C. § 1983.

74.     Specific to the Fourteenth Amendment violations, Plaintiffs were discriminated against by the individual Defendants based on their race and ethnicity and were subjected to the incidents forming the basis of Plaintiffs' Complaint and identified herein, as Plaintiffs were intentionally discriminated against based upon the color of their skin and their ethnicity.

75.     As a direct and proximate result of the violations of Plaintiffs' Civil and Constitutional rights by Defendants, Plaintiffs suffered a loss of their liberty and freedom, damage to their residence, bodily injury and immediate and ongoing pain and suffering, mental anguish. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully request this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT II

### 42 U.S.C. § 1983 – Fourth Amendment – Excessive Use of Force

### Plaintiffs v. Individual Defendants Fraino, Cancilla, Dilimone, Duffy, Gault, Rosato, Mercurio, and Blose

76.     Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

77.     The force used by Defendants against all Plaintiffs as detailed above during the course of their arrests was objectively inhumane and unnecessary, and constituted the unreasonable

use of excessive force in violation of Plaintiffs' clearly established Constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

78.     Defendants used unreasonable and excessive force against Plaintiffs when, with a depraved indifference to human life and conscious disregard for their safety and the safety of the general public, violently grabbed Plaintiffs, kicked, punched, and shoved Plaintiffs, choked Plaintiffs, and pointed weapons at Plaintiffs, as pled herein.

79.     The Individual Defendants committed the acts described herein in a gross disregard of Plaintiffs' Constitutional rights while acting under color of state law, and specifically deprived Plaintiffs of their Constitutional right to be free from excessive police force under the Fourth Amendment.

80.     At no time during this interaction with Defendants did any of the Plaintiffs pose any threat of violence to any Defendants.

81.     As a result of Defendants' outrageous conduct, Plaintiffs suffered significant physical and mental injuries.

82.     As a direct and proximate result of the excessive and unnecessary force used by Defendants, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and

appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT III

### 42 U.S.C. § 1983

### Failure to Intervene Against All Individual Defendants

83.     Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

84.     All individual Defendants are police officers acting under color of state law.

85.     The individual Defendants, as police officers working with one another on November 11, 2019, had a duty to intervene to prevent their fellow officers from using excessive force against the Plaintiffs, and to prevent the violations of Plaintiffs' Constitutional and Civil Rights.

86.     All individual Defendants had a reasonable opportunity to intervene given their proximity to the excessive force and Constitutional violations taking place and being perpetrated against Plaintiffs.

87.     Defendants failed to intervene or take any action to prevent Defendants from using excessive force, wrongfully detaining, and ultimately injuring the Plaintiffs, along with committing multiple violations of Plaintiffs' Constitutional and Civil Rights, was done in derogation of their responsibility to intervene as law enforcement officers.

88.     Furthermore, Defendants failed to intervene when the Civil and Constitutional rights of the Plaintiffs were violated with wrongful arrests, unlawful search and seizures, and ultimately an abuse of process and malicious prosecution.

89.     As a direct and proximate result of the conduct of Defendants, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish, and medical expenses for her treatment and care. The injuries suffered by Plaintiff are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT IV

**41 U.S.C. § 1983 – *Monell* Claim against Defendant City of Pittsburgh**

90.     Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

91.     Defendant City of Pittsburgh, through the actions of the Pittsburgh Bureau of Police, is subject to liability when its employees cause constitutional violations pursuant to a municipal policy or custom.

92.     Defendant City of Pittsburgh, through the actions of the Pittsburgh Bureau of Police, violated the Plaintiffs' Fourth Amendment rights by failing to train its officers to reasonably respond to non-threatening individuals like Plaintiffs and failing to provide adequate training as it relates to traffic stops, pursuit, de-escalation, excessive force, abuse of process, malicious prosecution, discrimination, and engaging in appropriate behavior and conduct which is becoming of a police officer acting under color of state law.

93.     Defendant Pittsburgh Bureau of Police violated the Plaintiffs' Fourth Amendment rights by engaging, as a custom, policy, and practice, in behavior that caused Constitutional violations to individuals like Plaintiffs by inappropriately responding to traffic stops, non-threatening situations with excessive, unreasonable, and unnecessary force, and discriminatory conduct towards Plaintiffs by removing Plaintiffs' Moorish Flag.

94.     These Constitutional violations were caused by Defendant Pittsburgh Bureau of Police's lack of training and supervision in regards to officers having the ability, knowledge, skills, and training to interact with non-threatening individuals like Plaintiff without causing physical harm.

95.     Furthermore, as a custom and policy, failed to provide adequate training, supervision, monitoring, or policies as a custom and practice to ensure that police officers did not engage in Constitutional violations and deprivations as Defendants did in this matter.

96.     Defendant City of Pittsburgh, through the actions of the Pittsburgh Bureau of Police, knew or should have known that Plaintiffs were non-threatening, and they should have known that any use of force was objectively unreasonable and unnecessary in light of the totality of the circumstances.

97.     The force used by the individual Defendants against Plaintiffs during their unlawful use of force, unlawful arrest, unlawful search and seizure, and all other violations of Plaintiffs' Constitutional and Civil Rights, was objectively inhumane and unnecessary. The actions of Defendant City of Pittsburgh, through the actions of the Pittsburgh Bureau of Police, constituted unreasonable and excessive use of force, in violation of the Plaintiff's clearly established Constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

98.     At no time were Plaintiffs a threat of any danger or violence.

99.     As a direct and proximate result of the conduct of individual Defendants, Plaintiffs suffered loss of their liberty and freedom, bodily injury and immediate and ongoing pain and suffering, mental anguish, and medical expenses for her treatment and care. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

100.    Furthermore, the individual Defendants were acting in accordance with custom and practice of Defendant City of Pittsburgh, through the actions of the Pittsburgh Bureau of Police, which failed to train the individual Defendants and failed to provide adequate policies, procedures, training, monitoring, and supervision to prevent Constitutional and Civil Rights violations from occurring.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT V

### 42 U.S.C. § 1983 – False Arrest/False Imprisonment

**Adult Plaintiffs (Regina Camp El, Harun Bey, Ahmari Camp El, and Ahmir Camp El) Against All Individual Defendants**

101.    Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

102.    As set forth above, through their direct actions, the individual Defendants caused false arrest and false imprisonment of the Adult Plaintiffs.

103.     In an effort to attempt to cover up all of the illegal and unconstitutional actions perpetrated by the individual Defendants, including excessive force, unlawful detention, unwarranted search and seizure, and improper handling of this incident, the individual Defendant Cancilla, along with fabricated "supporting" statements from the other additional individual Defendants, exaggerated and/or misrepresented the facts of this incident and brought unfounded claims and charges against Plaintiffs.

104.     The actions of the individual Defendants were taken without lawful authority and with malice. The actions of the individual Defendants thus constitute false arrest and false imprisonment.

105.     As a direct and proximate result of the conduct described above, Plaintiffs suffered loss of their liberty and freedom, bodily injury, and immediate and ongoing pain and suffering, mental anguish, and expenses for their injuries, treatment, care, and damages. The injuries suffered by Plaintiffs are ongoing and will continue indefinitely.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and appropriate to award to Plaintiffs in recovery for which this suit was brought.

## COUNT VI

**Malicious Prosecution – Adult Plaintiffs (Regina Camp El, Harun Bey, Ahmari Camp El, and Ahmir Camp El) Against Individual Defendant Cancilla**

106.     Plaintiffs incorporate all previous paragraphs of their Complaint herein by reference.

107.    Defendant Officer Cancilla was the officer signing and attesting to the charges brought against the Adult Plaintiffs, which were ultimately resolved in Plaintiffs' favor.

108.    The remaining individual Defendants provided fabricated "supporting" statements to justify the charges brought against the Adult Plaintiffs by Defendant Officer Cancilla.

109.    Defendant Cancialla wrongfully caused criminal proceedings to be instituted against Plaintiffs with malice and absence of probable cause in an effort to conceal the wrongful and unconstitutional conduct by all individual Defendants in violating Plaintiffs Civil and Constitutional Rights during the conduct pled herein.

110.    Defendant Cancilla, individually and with the fabricated "supporting" information from the other individual Defendants, submitted police reports to prosecuting authorities containing false statements and/or material omissions. These reports, ultimately signed and endorsed by Officer Cancilla, were relied upon by prosecuting authorities.

111.    The criminal proceedings terminated in favor of Plaintiffs and all charges were withdrawn against Plaintiffs.

112.    The actions of the Defendant Cancilla constitute malicious prosecution under the laws of the Commonwealth of Pennsylvania.

113.    As a direct and proximate result of these violations of Plaintiffs' Civil and Constitutional Rights, Plaintiffs suffered injuries and damages as previously set forth.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court provide relief in the form of compensatory damages in excess of the jurisdictional limits, economic damages for all costs associated with the injuries sustained by Plaintiffs, punitive damages, reasonable attorney's fees and costs of suit, and any other relief which this Honorable Court deems necessary and

appropriate to award to Plaintiffs in recovery for which this suit was brought.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter judgment in their favor and against all Defendants, jointly and severally, and award them compensatory and damages in an amount in excess of jurisdictional arbitration limits, punitive damages, interest, costs, attorneys' fees, and any other relief which this Honorable Court may deem necessary.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Respectfully submitted,

By: */s/ Max Petrunya*
MAX PETRUNYA, ESQUIRE
Pa. I.D. No.: 309122
MAX PETRUNYA, P.C.
5 Bayard Rd. Unit 917
Pittsburgh, PA 15213
(412) 720-3497
maxpetrunyapc@gmail.com

By: */s/ Paul Jubas*
PAUL JUBAS, ESQUIRE
Pa. I.D. No.: 311832
PAUL JUBAS LAW, P.C.
P.O. Box 10704
Pittsburgh, PA 15203
(412) 230-0023
pjubasesq@gmail.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of February, 2022, I caused a copy of the foregoing

Plaintiffs' First Amended Complaint to be served via the Court's CM/ECF system to all attorneys

of record, including counsel for the Defendants.



By: */s/ Max Petrunya*
  MAX PETRUNYA, ESQUIRE
  Pa. I.D. No.: 309122
  MAX PETRUNYA, P.C.
  5 Bayard Rd. Unit 917
  Pittsburgh, PA 15213
  (412) 720-3497
  maxpetrunyapc@gmail.com


  *Counsel for Plaintiffs*